UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------------X
JAG M. KALRA,

                              Plaintiff,                CV-06-5890 (JFB)(ETB)

      -against-                               **MEMORANDUM**
                                                                 **OPINION AND ORDER**

HSBC BANK USA, N.A.,

                              Defendant.
----------------------------------------------------------------X

      Before the court is the motion of the defendant, HSBC Bank USA, N.A. ("HSBC" or "defendant"), seeking a protective order pertaining to three privileged documents that defendant asserts were inadvertently produced to the pro se plaintiff during discovery. Pro Se plaintiff, Jag M. Kalra ("Kalra" or "plaintiff"), maintains that defendant's production of the privileged documents was not inadvertent and amounts to a waiver of the attorney-client privilege.

      An evidentiary hearing with respect to this issue was held on March 5, 2008. Defendant offered two witnesses at the hearing, an attorney and a paralegal from defendant's Office of General Counsel, who were involved in the document production at issue. Plaintiff testified on his own behalf.

      For the following reasons, defendant's motion for a protective order is granted.

## FACTS

      This is an action for employment discrimination. Plaintiff alleges that his employment with HSBC was terminated due to his age. HSBC denies any discrimination and asserts that plaintiff was terminated as a result of performance issues.

On April 12, 2007, during the course of discovery in the within action, HSBC produced to plaintiff approximately 100 pages of emails and other documents in response to a discovery demand made by plaintiff (the "April 12th Production"). (Tr. of Evid. Hrg., dated March 5, 2008 ("Tr."), 5-6.) Within this production were three attorney-client privileged emails between HSBC's in-house attorneys and one of its Human Resources representatives concerning plaintiff. (Tr. 6.)

Meredith Friedman, an attorney in HSBC's General Counsel's Office, testified that in response to a discovery demand made by plaintiff in early 2007, she instructed a paralegal, Sharon McRae, to gather various documents, including emails, that concerned the plaintiff. (Tr. 5-6.) Ms. Friedman further instructed Ms. McRae to review the documents for privilege. (Tr. 6.) Ms. Friedman could not recall whether Ms. McRae returned the documents to her for further review or if they were sent directly to the plaintiff after Ms. McRae reviewed them. (Tr. 6.) However, Ms. Friedman testified that her usual practice for producing documents is to have the paralegal gather the documents and conduct an initial review for a variety of privilege issues, including attorney-client privilege. (Tr. 9.) The paralegal then provides the reviewed documents to Ms. Friedman with any possibly privileged documents marked with tabs. (Tr. 10.) Ms. Friedman then conducts a second review of the documents, any privileged documents are either redacted or removed entirely, and the documents are produced. (Tr. 10.)

After the documents were produced to plaintiff herein, Ms. Friedman observed while reviewing her file of this action that the April 12th Production may have included three privileged emails: (1) an undated email from Debbie Hamid in HSBC's Human Resources department to Scott Miller and Tracy Woodrow, attorneys in HSBC's General Counsel's Office, seeking legal

advice concerning plaintiff; (2) a response, dated December 6, 2005, from Mr. Miller to Ms. Hamid containing legal advice; and (3) an email, dated December 6, 2005, from Ms. Hamid to Mr. Miller.[1] (Tr. 6-7, 13; Court Ex. 2.) Ms. Friedman testified that she contacted plaintiff via telephone that same day and informed him that there may have been privileged communications included in the April 12th Production that had been inadvertently provided. (Tr. 7, 9.) Ms. Friedman advised plaintiff that any such emails would have been authored by or addressed to either Scott Miller or Tracy Woodrow. (Tr. 12.) Ms. Friedman requested that plaintiff review the April 12th Production for these emails and that if he found them, that he return them to HSBC.[2] (Tr. 7.)

Plaintiff advised Ms. Friedman that he would review the April 12th Production for any privileged emails and that he understood what Ms. Friedman was stating. (Tr. 7.) Plaintiff did not contact Ms. Friedman with respect to the privileged emails following this telephone conversation. (Tr. 7.) Nor did plaintiff ever inform Ms. Friedman whether he had found the emails. (Tr. 7.) Rather, on February 8, 2008, in response to HSBC's motion for summary judgment, plaintiff attached two of the privileged emails as exhibits to his opposition papers. (Tr. 8.) Ms. Friedman testified that this was the first time she became aware that the privileged

---

[1] Ms. Friedman was not certain of the exact amount of time that elapsed between the April 12th Production and her discovery of the inadvertently produced emails. (Tr. 8-9.) However, she testified that it was "fairly soon" after the April 12th Production and certainly less than one month later. (Tr. 8.)

[2] Ms. Friedman testified that the April 12th Production was not Bates stamped and therefore she could not direct plaintiff to the specific emails by Bates stamp numbers. (Tr. 7.) Rather, Ms. Friedman advised plaintiff that she was not certain that he had received the privileged emails - because it was possible that the privileged documents had been commingled during photocopying but separated out from the April 12th Production prior to producing it to plaintiff - but that if he had, to please return them. (Tr. 7.)

emails had in fact been inadvertently produced to plaintiff and that, despite HSBC's request to have the documents returned, plaintiff had kept them.[3] (Tr. 8.)

Sharon McRae, a senior paralegal in HSBC's General Counsel's Office, also testified on behalf of defendant. (Tr. 32.) Ms. McRae possesses a paralegal certificate and has been employed as such for approximately eight years. (Tr. 32-33.) Ms. McRae testified that approximately one year ago - March 2007 - HSBC received interrogatories and document demands from plaintiff. (Tr. 30-31.) Ms. McRae gathered the responsive documents and reviewed them for privilege, at the request of Ms. Friedman. (Tr. 31.) Ms. McRae testified that HSBC's usual practice when producing documents is for the paralegal to gather the responsive documents, review them and then provide them to one of the attorneys in the General Counsel's Office. (Tr. 31.) With respect to the April 12th Production, Ms. McRae recalled reviewing the documents that were produced to plaintiff but could not recall whether she observed any privileged documents within the production. (Tr. 32.) Nor could Ms. McRae recall whether she observed the specific privileged documents at issue in the instant motion. (Tr. 34.)

Plaintiff testified at the evidentiary hearing. He stated that upon receipt of the April 12th Production from HSBC, he observed that one document, dated December 6, 2005 and authored by Scott D. Miller, contained a notation of "attorney/client privilege" on it. (Tr. 38.) Plaintiff stated that the "contents [of this document] were very interesting." (Tr. 38.) Plaintiff further testified that after he was advised of the inadvertent disclosure by Ms. Friedman, (Tr. 42), he reviewed the contents of the April 12th Production again and that, after reviewing the contents of

---

[3] The third email that HSBC seeks to recover, dated December 6, 2005, from Ms. Hamid to Mr. Miller, was not included by plaintiff as an exhibit to his opposition to defendant's motion for summary judgment. (Tr. 14.)

the privileged emails, he decided that if Ms. Friedman were to contact him again, he would return the documents. (Tr. 38-39.) According to plaintiff, due to the "interesting" content of the privileged emails, he decided not to return them as Ms. Friedman requested. (Tr. 39.) Rather, plaintiff "ke[pt] quiet" and "used" the documents to oppose HSBC's motion for summary judgment. (Tr. 39.) Plaintiff testified that he kept the privileged emails and attached them to his papers in opposition to HSBC's motion for summary judgment in an effort to demonstrate that he was not terminated as a result of performance issues, as HSBC asserts, but rather, due to discrimination. (Tr. 39.)

When questioned by the Court as to why he did not return the privileged documents when requested to by Ms. Friedman, plaintiff testified that Ms. Friedman "was not sure" about the author of the privileged emails. (Tr. 40.) According to plaintiff, Ms. Friedman "just mentioned there's one e-mail that has attorney/client privilege . . . She did not mention the date, she did not mention the time . . . [S]he never got back to me." (Tr. 40.) Plaintiff repeated that after being contacted by Ms. Friedman and reviewing the April 12th Production again, one particular email - the December 6, 2005 email from Scott Miller - stood out to him as possibly being the email to which Ms. Friedman was referring. (Tr. 40-41.) However, plaintiff did not return the document because the email was "different than other e-mails" and he "thought this was important and that [he] should hold on to it." (Tr. 41.) According to plaintiff, he had no intention of using the privileged documents in any way until he received HSBC's motion for summary judgment, which included affidavits submitted in support of the motion that stated that plaintiff was terminated for computer performance issues. (Tr. 39, 41.)

Plaintiff acknowledged that Ms. Friedman advised him that the emails should never have

-5-

been produced. (Tr. 42.) Plaintiff further testified that Ms. Friedman instructed him that he could not use the privileged emails and that he advised Ms. Friedman that he would review the April 12th Production to see if it contained any privileged emails. (Tr. 42.) According to plaintiff, Ms. Friedman never instructed plaintiff to return the privilege documents. (Tr. 42.) Plaintiff stated that he informed Ms. Friedman that he would look for the privileged documents but that he "did not promise" that he would return them. (Tr. 43.) Plaintiff further testified that, after reviewing the April 12th Production, he recognized that the December 6, 2005 email was privileged but that he did not contact Ms. Friedman to inform her that he was in possession of it because "if [she was] on top of it, [he] expected a call from [her]." (Tr. 44-45.) Plaintiff agreed that Ms. Friedman did not advise him that she would contact him again but nevertheless, as a "prudent attorney," he expected her to contact him a second time if she wanted the documents returned. (Tr. 45.)

HSBC submitted the instant motion to Judge Bianco on February 12, 2008, seeking the return of the three privileged emails. Judge Bianco thereafter referred the motion to the undersigned.

## DISCUSSION

I.  Inadvertent Production of Privileged Documents

"As a general rule, the voluntary production of a privileged document waives any claim of privilege with respect to that document." United States v. Rigas, 281 F. Supp. 2d 733, 737 (S.D.N.Y. 2003). However, the inadvertent production of privileged documents does not waive privilege unless the producing party's conduct was "so careless as to suggest that it was not

concerned with the protection of the asserted privilege." Atronic Int'l, GMBH v. SAI Semispecialists of Am., Inc., 239 F.R.D. 160, 163 (E.D.N.Y. 2005) (citing SEC v. Cassano, 189 F.R.D. 83, 85 (S.D.N.Y. 1999)). Courts routinely engage in a four-factor balancing test, in which no single factor is dispositive, to determine whether the inadvertent production of privileged documents waives the privilege. The four factors are: (1) the reasonableness of precautions taken to prevent inadvertent disclosure; (2) the time taken to rectify the error; (3) the extent of disclosure relative to the scope of discovery; and (4) overreaching issues of fairness. Lois Sportswear v. Levi Strauss & Co., 104 F.R.D. 103, 105 (S.D.N.Y. 1985) ; see also Rigas, 281 F. Supp. 2d at 738.

    A.    Reasonableness of Precautions to Prevent Inadvertent Disclosure

The first factor to consider is the extent to which defendant undertook reasonable precautions to avoid disclosure. Lois, 104 F.R.D. at 105. The reasonableness of a party's actions to protect privileged information is measured "in light of the risks *foreseeable* to that party at the time the precautions were taken." Rigas, 281 F. Supp. 2d at 739 (emphasis in original). Moreover, the mere fact of accidental disclosure does not automatically render the precautionary measures unreasonable. Id.; see also In re Copper Market Antitrust Litig., 200 F.R.D. 213, 222 (S.D.N.Y. 2001) ("The mere fact of disclosure does not establish that a party's precautions undertaken to protect the privileged evidence were unreasonable.") (citation omitted).

Although this rule recognizes that mistakes are often made in the discovery process, it "creates an incentive for counsel to guard the privilege closely, as the failure to take reasonable precautions will result in a waiver." United States v. Gangi, 1 F. Supp. 2d 256, 264 (S.D.N.Y.

1998). Where attorneys employ fairly "extensive and rigorous procedures" when reviewing and producing documents, privilege is generally found not to have been waived and the production of any privileged documents is deemed inadvertent. Aramony v. United Way of Am., 969 F. Supp. 226, 236 (S.D.N.Y. 1997) (holding that there was no waiver of privilege where attorneys and paralegals initially reviewed documents and segregated potentially privileged documents for review by senior associates, even though the law firm did not re-review the documents selected for copying); see also Prescient Partners, LP v. Fieldcrest Cannon, Inc., No. 96 Civ. 7590, 1997 WL 736726, at *5 (S.D.N.Y. Nov. 26, 1997) (finding precautions taken to be reasonable where attorney personally reviewed documents, marked privileged documents and instructed paralegal to remove privileged documents prior to production); Lloyds Bank PLC v. Republic of Equador, No. 96 Civ. 1789, 1997 WL 96591, at *4 (S.D.N.Y. Mar. 5, 1997) (holding that there was no waiver where attorneys spent fifty hours reviewing documents for responsiveness and privilege and segregated documents prior to production); Georgia-Pacific Corp. v. GAF Roofing Mfg. Corp., 93 Civ. 5125, 1995 WL 11787, at *2 (S.D.N.Y. Mar. 20, 1995) (finding no waiver where the attorney spent 145 hours reviewing documents for production, the attorney segregated privileged documents, and only by inadvertence, a small number of privileged documents were produced).

     Here, Ms. Friedman and Ms. McRae both testified that they typically follow the same procedure when reviewing and producing documents. Specifically, Ms. Friedman instructs Ms. McRae to gather the responsive documents and to conduct an initial review of the documents for a variety of privilege issues, including attorney-client privilege. Ms. McRae then provides the documents to Ms. Friedman with any possibly privileged documents marked with tabs. Ms.

Friedman then conducts a second review of the responsive documents, redacts or removes any privileged documents, and the documents are then produced. As Ms. McRae testified, which I credit, this procedure was followed in the instant action with respect to the April 12th Production made to plaintiff. Although Ms. Friedman could not specifically recall reviewing the April 12th Production a second time prior to it being produced to plaintiff, I credit the testimony that this is the typical procedure that is employed by HSBC when producing documents.

Accordingly, I do not find defendant's document review procedures to be "so lax, careless, inadequate or indifferent to consequences" as to label them unreasonable, rendering inadvertent production of the privileged documents a waiver. In re Copper, 200 F.R.D. at 222 (citing Martin v. Valley Nat'l Bank, No. 89 Civ. 8361, 1992 WL 196798, at *3 (S.D.N.Y. Aug. 6, 1992)).

  B. Time Taken to Rectify the Error

The second factor is whether the producing party sought relief promptly upon learning that the privileged information had been disclosed. Atronic, 239 F.R.D. at 165. "Inadvertent disclosure has been held to be remedied when the privilege was asserted immediately upon discovery of the disclosure and a prompt request is made for the return of the privileged documents." Id. (citing cases). "Inordinate delay in claiming the privilege can prejudice the adversary and may be deemed a waiver." Prescient Partners, 1997 WL 736726, at *6 (citation omitted). The length of delay is measured "'from the time the producing party learns of the disclosure, not from the time of the disclosure itself.'" Atronic, 232 F.R.D. at 165 (quoting United States Fid. & Guar. Co. v. Braspetro Oil Servs. Co., 2000 WL 744369, at *6 (S.D.N.Y. June 8, 2000)); Prescient Partners, 1997 WL 736726, at *6 (citing cases).

In In re Natural Gas Commodity Litigation, 229 F.R.D. 82 (S.D.N.Y. 2005), the court held that there was no waiver where the producing party immediately asserted privilege upon discovery of the inadvertent disclosure and the pages at issue were listed on a privilege log. See id. at 90; see also Georgia-Pacific Corp., 93 Civ. 5125, 1995 WL 11787, at *2 (S.D.N.Y. 1995) (holding that reacting two business days after discovery of the inadvertent disclosure was not an inordinate delay). Similarly, in United States v. Rigas, 281 F. Supp. 2d 733, 741 (S.D.N.Y. 2003), the court held that where the government sent a letter seeking the return of privileged information on the same day that it learned of the inadvertent disclosure, its efforts to rectify the error weighed in favor of finding that there was no waiver of privilege.

I credit the testimony of Ms. Friedman, who testified that she discovered HSBC's inadvertent production shortly after the April 12th Production was made to plaintiff, while reviewing the file in this action. Ms. Friedman stated that she contacted plaintiff via telephone the very same day that she discovered the inadvertent disclosure and advised him that the April 12th Production might contain certain privileged emails that should not have been produced. Ms. Friedman further requested that plaintiff review the April 12th Production for any emails from or to either Scott Miller or Tracy Woodward and return any such documents that he may find.[4] Although Ms. Friedman should have put her request in writing and should have followed up with a second written request, I do not find that her actions constitute an inordinate delay in

---

[4] I do not credit plaintiff's testimony that Ms. Friedman did not request the return of the privileged documents. When the Court inquired as to whether Ms. Friedman asked that the documents be returned prior to receiving plaintiff's opposition to defendant's motion for summary judgment, plaintiff testified "No. *Except once in 2007.*" (Tr. 46) (emphasis added). Such testimony supports Ms. Friedman's assertion that she requested that plaintiff return any inadvertently produced documents.

attempting to rectify the error of inadvertent disclosure.

  C.  The Scope of Discovery and Extent of Disclosure

  The third factor focuses on a comparison between the number of privileged documents - or pages - disclosed and the overall size of the document production. See Prescient Partners, 1997 WL 736726, at *6 (holding that there was no waiver where 117 pages of the overall document production of 12,612 pages were inadvertently disclosed). "This factor recognizes the reality that 'it is virtually impossible to avoid any error whatsoever in dealing with large volumes' of discovery material." Rigas, 281 F. Supp. 2d at 740 (quoting Cassano, 189 F.R.D. at 86). Courts have routinely found that where a large number of documents are involved, there is more likely to be an inadvertent disclosure as opposed to a knowing waiver of privilege. See, e.g., In re Natural Gas, 229 F.R.D. at 89 (finding no waiver where defendant inadvertently disclosed three pages out of 65,000 pages produced and 140,000 pages reviewed); In re Copper, 200 F.R.D. at 222 (finding the scope of inadvertent production small where 17 privileged documents out of 15,000 pages were inadvertently produced); Asian Vegetable Research v. Inst. of Int'l Educ., 94 Civ. 6551, 1995 WL 491491, at *7 (S.D.N.Y. Aug. 17, 1995) (finding twenty inadvertently disclosed pages was a "relatively small" number compared to the total of 75,000 pages produced); Lois, 104 F.R.D. at 105 (finding that where 22 documents out of 16,000 pages reviewed were claimed to be privileged, disclosure did not constitute a waiver).

  In the within action, the April 12th Production consisted of approximately 100 pages. Defendant asserts that three to four pages - or three documents - are privileged and were inadvertently produced. This amounts to approximately four percent (4%) of the overall production. Accordingly, although the overall size of the production is relatively small, so is the

number of inadvertently disclosed documents such that this factor does not weigh in favor of a finding that defendant waived privilege.

      D.      <u>Overreaching Issues of Fairness</u>

The final factor focuses on "whether the act of restoring immunity to an inadvertently disclosed production of documents would be unfair." <u>Prescient</u> <u>Partners</u>, 1997 WL 736726, at *7. It does not, however, focus on "whether the privilege itself deprives parties of pertinent information." <u>Id.</u>; <u>see</u> <u>also</u> <u>In re Copper</u>, 200 F.R.D. at 223 ("Depriving a party of information in an otherwise privileged document is not prejudicial.").

"Courts generally weigh the prejudices to each party." <u>In re Natural Gas</u>, 229 F.R.D. at 89. On the one hand there is the degree to which the contents of the disclosure have been disseminated and relied upon, <u>see</u> <u>Rigas</u>, 281 F. Supp. 2d at 741 ("[g]enerally, courts hold that fairness dictates a finding of waiver in cases where the privileged information at issue has been widely disseminated"), and, on the other hand, there is the harm to the client who suffers a waiver of privilege due to an inadvertent error. <u>See</u> <u>Prescient</u> <u>Partners</u>, 1997 WL 736726, at *7 ("Absent any prejudice to the defendants caused by restoring immunity to the documents, '[i]t would be inappropriate for the client of producing counsel to suffer the waiver of privilege . . . due to an isolated, inadvertent error.'") (quoting <u>Aramony</u>, 969 F. Supp. at 237). Additionally, "in certain circumstances, '[a]dvancing claims or defenses that make the protected information at issue relevant to the case may justify a waiver.'" <u>Atronic</u>, 232 F.R.D. at 166 (finding a waiver where the emails at issue went to "the heart of th[e] breach of contract litigation") (quoting <u>Local 851 Brotherhood of Teamsters v. Kuehne & Nagel Air Freight, Inc.</u>, 36 F. Supp. 2d 127, 134 (E.D.N.Y. 1999)) (alteration in original).

Plaintiff asserts that he did not return the privileged documents upon discovering them because their contents were "interesting" and the emails go to the heart of his claim that he was terminated as a result of discrimination and not due to performance issues. Plaintiff further asserts that defendant should be found to have waived privilege with respect to the inadvertently produced documents because its document production practices are negligent and careless. However, as stated supra, I credit the testimony of Ms. Friedman and Ms. McRae with respect to HSBC's document review and production procedures and do not find that such procedures are "so lax, careless, inadequate or indifferent to consequences" as to label them unreasonable, rendering inadvertent production of the privileged documents a waiver. In re Copper, 200 F.R.D. at 222 (citing Martin v. Valley Nat'l Bank, No. 89 Civ. 8361, 1992 WL 196798, at *3 (S.D.N.Y. Aug. 6, 1992)). Moreover, as stated above, the evaluation of overall fairness does not focus on whether or not the receiving party is being deprived of information it believes is pertinent to its prosecution or defense of the action. See In re Copper, 200 F.R.D. at 223; Prescient Partners, 1997 WL 736726, at *7; see also Bank Brussels Lambert v, Credit Lyonnais (Suisse) S.A., 160 F.R.D. 437, 446 (S.D.N.Y. 1995) ("[T]he relevance of a privileged document to the merits of the litigation does not make it unjust to withhold it from discovery."). Rather, it pertains to the relative prejudices each party would suffer by virtue of restoring privilege to the documents inadvertently disclosed. See In re Natural Gas, 229 F.R.D. at 89; Prescient Partners, 1997 WL 736726, at *7.

Here, plaintiff claims that he never intended to use the privileged documents but only attached them to his papers in opposition to HSBC's summary judgment motion in an effort to dispute the affidavits offered by HSBC stating that plaintiff was terminated as a result of

computer performance issues.  Moreover, there was no testimony that the privileged documents have been disclosed to anyone else.  In addition, a careful review of the privileged documents demonstrates that there is nothing contained therein that goes directly to the claims or defenses asserted in this action, thereby placing the protected information at issue such that a waiver may be justified.  See Atronic, 232 F.R.D. at 166.  Accordingly, plaintiff cannot claim to have relied on these documents to his detriment and "ha[s] not demonstrated any unfairness to [him] that would result from the return of the documents."  In re Natural Gas, 229 F.R.D. at 90 (finding that considerations of overall fairness favored restoring privilege to the documents where plaintiffs did not use or rely on the documents inadvertently produced and refrained from reviewing the documents pending the court's resolution of the dispute).

On the other hand, defendant will suffer a great disadvantage should a waiver of privilege be found, whereby plaintiff will be privy to, and will be able to use against defendant, privileged information concerning legal advice rendered to HSBC by its in-house counsel.  Permitting plaintiff to use such information would place HSBC in the position of having to defend it's counsel's legal advice, which is exactly what the attorney-client privilege is designed to prevent.  Since there has been no showing of prejudice to plaintiff if defendant's assertion of privilege is recognized as to the documents at issue, "[i]t would be inappropriate for [plaintiff] to suffer the waiver of privilege . . . due to an isolated, inadvertent error."  Aramony, 969 F. Supp. at 237.

CONCLUSION

Based on the foregoing, defendant's motion for a protective order with respect to the three privileged documents inadvertently produced to the pro se plaintiff is granted.  Plaintiff is

directed to return all copies of the inadvertently produced documents in his possession to defendant within ten (10) days from the date of this Order. Any and all portions of plaintiff's opposition to defendant's motion for summary judgment that refer to or are based on the privileged documents are stricken, including, <u>inter alia</u>, the documents themselves that plaintiff attached as exhibits.

SO ORDERED.

Dated: Central Islip, New York
      April 28, 2008

                                        <u>/s/ E. Thomas Boyle</u>
                                        HON. E. THOMAS BOYLE
                                        United States Magistrate Judge